CASE 20—PETITION EQUITY—OCTOBER 11.

# Central Kentucky Lunatic Asylum v. Craven.

### APPEAL FROM BOONE CIRCUIT COURT.

1. ABANDONMENT OF HOMESTEAD.—Where a debtor was entitled to the homestead exemption at the time his wife was confined in a lunatic asylum, and after she was so confined he left his household goods in his dwelling, sleeping there a part of the time and sleeping a part of the time at his father's home, where he took his meals, he can not be regarded as having abandoned his homestead.

2. RIGHT TO EXEMPTION AGAINST COMMONWEALTH.—While as a general rule the Commonwealth is not to be regarded as embraced within the provisions of a statute unless by express provision of the statute or by necessary implication, yet a homestead is exempt from the payment of a claim of the Commonwealth against the owner for the expense of keeping his wife in one of its asylums.


S. W. TOLIN FOR APPELLANT.

1. To entitle a debtor to the homestead exemption he must not only be a housekeeper, but must be one with a family. The appellee is neither. (Anderson's Law Dictionary, p. 440; Carter, &c., v. Adams, 9 Ky. Law Rep., 91; Bosquett, &c., v. Hall, 12 Ky. Law Rep., 433; Brooks, &c., v. Collins, &c., 11 Bush, 627.)

2. A suit in the name of appellant is equivalent to a suit in the name of the Commonwealth. (Ky. Stats., sec. 257.) And the exemption law only applies as against individuals and not as against the Commonwealth. (Commonwealth v. Cook, &c., 8 Bush, 222.)


J. M. LASSING AND O'HARA & ROUSE FOR APPELLANT.

The temporary absence of appellee from his home during his wife's illness and consequent confinement in the asylum does not work a forfeiture of his homestead exemption. (State v. Finn, 8 Mo. App., 261; Ellis v. Davis, 90 Ky., 183; Stanley v. Snyder, 43 Ark., 429; Kimbrel v. Willis, 97 Ill., 497; Euper v. Alkire, 37 Ark., 283; Kenley v. Hudleson, 99 Ill., 493.)

The wife would be entitled to the homestead upon her recovery,

and return even though the husband should die in the meantime. (Gay v. Hanks, 82 Ky., 552; Phipps v. Acton, 12 Bush, 375.)

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

James T. Craven owned and with his wife occupied a house and two acres of land as a homestead. They had no children. In 1885 the wife was adjudged a lunatic and confined in the Central Kentucky Lunatic Asylum, since which time she has remained there. The husband failing to pay the expenses of his wife at the asylum, this action was instituted by appellant to subject the property to the payment of the claim arising from the confinement of the wife in that institution.

The property is less than $1,000 in value. Appellee claimed it was exempt as a homestead, and the court below sustained his claim and adjudged it to him. To review that judgment of the court this appeal is prosecuted.

It is insisted that the appellee's petition is defective because it is not sufficiently alleged that at the time of the levy of the execution on the property he was "occupying" it as a homestead. Without stopping to inquire as to the correctness of this position it is sufficient to say that the appellant's answer cured the supposed defect because it denies the occupancy of appellee.

It is claimed by appellant that the appellee is not entitled to the property as a homestead for two reasons: One because he had abandoned the premises after the confinement of his wife in the asylum, and the other because in no event is it exempt from the claim of the Commonwealth. Since the confinement of his wife in the asylum appellee has kept his household goods in his dwelling, and his other personal property on the place. He has slept part of the time at his house and part of the time at his father's, who

lives a short distance from him. He has taken his meals at his father's since his wife's confinement in the asylum. These are the facts upon which it is claimed he has abandoned his homestead, and is no longer a housekeeper with a family.

There is no question that he was a *bona fide* housekeeper with a family, occupying and claiming the property as a homestead when his wife was adjudged a lunatic. The facts show that there has been no intention on the part of the claimant to abandon the homestead. There has been no abandonment of it unless the forced absence of his wife amounts to an abandonment.

The fact that he sometimes slept at his father's house, and took his meals there all the time, would be no act of abandonment. A party would not lose his homestead because he and his family occasionally slept elsewhere and continuously boarded elsewhere. To do this would not deprive them of the character of housekeepers in fact or in contemplation of the homestead law.

When the homestead right has once attached the claimant can move away from it and still hold it as a homestead if he has a purpose to again live on it and make it his home. Such temporary absence does not deprive him of his homestead. His wife was as much a part of his family as if she had been living with him. The husband continued under the same legal and moral obligation to support her as existed before she was adjudged a lunatic. The absence of the wife was not even voluntary. It was enforced by disease, to treat which it was necessary to confine her in the asylum. She may at any time have her reason restored and claim her husband's protection and support. For the purpose of determining the husband's right to his homestead

she must be regarded as constituting part of his family and living with him.

This court held, in Commonwealth v. Cook, 8 Bush, 220, that the general rule in regard to the construction of statutes is that the State is not to be regarded as embraced within the provisions of a statute unless it is so expressed or by necessary implication was intended to be included.

That was a case of the default of a sheriff in the collection and payment of public revenues.

This court held, in the case of Commonwealth v. Lay, 12 Bush, 283, that a homestead was exempt from the payment of fines and costs recovered in the name of the Commonwealth. In that case the court said: "These are ordinary executions issued doubtless for fines imposed or the costs of the proceeding to be paid to officers of the court; and it is obvious that it never was intended by the law-making power that such liabilities on the part of the debtor should operate to deprive his family of the beneficent provisions of the statute."

The debt for the payment of which it is sought to deprive appellee of his homestead is an ordinary debt incurred for board and medical attention to the wife, and the attempt to enforce it is by the method employed by ordinary creditors. We can not believe that the legislature, in providing asylums for the unfortunate, intended to wrest from the one who was under obligation to pay the expenses of some inmate, his homestead, when the homestead law is the result of a wise public policy.

If the position of the appellant is correct, the fact that appellee had many helpless children depending on him for support would add nothing to the merits of his claim, from a legal standpoint, to his homestead.

From public policy it is held that the Commonwealth is

not to be regarded as embraced within such provisions of the statute unless so expressed, or by necessary implication was intended to be included. On the other hand the homestead law is founded on a sound public policy. In this apparent conflict of public policy we must conclude that the legislature never intended that the Commonwealth should subject its debtor's homestead to the payment of the expenses of keeping.his wife in one of her asylums.

The judgment is affirmed.